UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO:

BAD MOMS, LLC,
a Florida limited liability company,

    Plaintiff,

vs.

STX FINANCING, LLC,
a Delaware limited liability company,

    Defendant.
_____/

## COMPLAINT

Plaintiff, BAD MOMS, LLC (hereinafter "Plaintiff"), brings this action, by and through the undersigned attorneys, against Defendant STX Financing, LLC (hereinafter "Defendant"), for declaratory relief, attorneys' fees and costs, and in support thereof alleges that:

## PARTIES

1. Plaintiff is a Florida limited liability company with a principal place of business in Fort Lauderdale, Florida.

2. Upon information and belief, Defendant is a Delaware limited liability company with an office address of 3900 West Alameda Avenue, 32nd Floor, Burbank, California 91505.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

*A) Plaintiff's Company, Trademark, Trademark Applications and Domain Names*

3. Plaintiff has invested considerable time, effort, money and other resources into a start-up business called Bad Moms, LLC for the purpose of planning and conducting business

networking, social, commercial and educational events geared toward women and a line of wines and spirits similarly targeted in connection with the brand **BAD MOMS**.

4. Plaintiff's founder is a working single mother of two who worked her way through college and law school, rising out of poverty to become a successful owner of a law practice, an entrepreneur and, most significantly, a mother. For years, she has been conceiving of, contemplating and fine-tuning her concept of sharing her experience with other women and empowering them through sharing her own experience, through education, creating of networks of similarly-situated mothers and aspiring mothers and to provide an outlet for them to relax and have fun in the company of like-minded women.

5. Plaintiff created the brand **BAD MOMS** to organize and host its own events and those of others, and has created a cartoon-like character in the image of Plaintiff's founder, color scheme and branding for the events and for a line of wines and spirits.

6. Plaintiff has planned, scheduled, paid a deposit and has had to reschedule and cancel various events to launch its **BAD MOMS** brand in its home city of Fort Lauderdale, Florida, voluntarily, and also because of the acts of the Defendant as more fully described below. The latest event was scheduled for January 25, 2018.

7. Plaintiff developed a website for the brand and registered the domain names www.badmoms.life, www.badmoms.me and various similar domain names and incurred significant expenses related thereto.

8. Plaintiff filed two applications for United States Trademark Registration directed to the mark **BAD MOMS** with the United States Patent and Trademark ("USPTO") Office on January 27, 2017 for the following goods and services:

> Alcoholic beverages except beers; Alcoholic beverages, namely, digestifs; Alcoholic beverages, namely, flavor-infused whiskey; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic cocktails in the form of frozen pops; Alcoholic energy drinks; Alcoholic fruit cocktail drinks; Alcoholic mixed beverages except beers; Brandy; Dessert wines; Hard cider; Limoncello (lemon liqueur); Liqueurs; Rum; Rum infused with vitamins; Sangria; Tequila; Tequila infused with vitamins; Vodka; Wine coolers being drinks; Wine-based drinks; Wines and sparkling wines; Aperitifs with a distilled alcoholic liquor base; Hard lemonade; Limoncello (lemon liqueur); Prepared alcoholic cocktail, in International Class 33 (Application Serial No. 87315506); and
>
> Special event planning for social entertainment purposes, in International Class 41 (Application Serial No. 87315504).[1]

9.  Plaintiff filed the above-referenced applications under Section 1(b) of the United States Trademark Act, 15 U.S.C. §1051(b) based on a *bona fide* intention to use the applied for marks in commerce.  To date, at least Application Serial No. 87315504 (for "[s]pecial event planning for social entertainment purposes") has been examined by the USPTO, passed the Publication Period without opposition from Defendant, or anyone else, and has been allowed registration by the USPTO.  Pending Plaintiff's filing of a Statement of Use, specimen of use and prescribed fee with the USPTO under Section 1(d)(1) of the Act, 15 U.S.C. § 1051(d)(1), Application Serial No. 87315504 will mature into a federal trademark registration upon which Plaintiff can claim a presumption of nationwide priority under 15 U.S.C. § 1057 over Defendant and any third parties to use the mark **BAD MOMS** and any confusingly similar marks in connection with the recited services and any related services.

10. Plaintiff optimistically expects a similar fate for Application No. 87315506 for its wines and spirits.

   *B) Defendant's Film, Trademark Applications and Threats of Litigation*

---

[1] The goods and services recited in Plaintiff's above-referenced trademark applications, Nos. 87315504 and 87315506 shall hereinafter be referred to as "Plaintiff's Goods and Services."

11. Defendant claims to be the producer and distributor of a motion picture entitled "*Bad Moms*" which, upon information and belief was released in July of 2016, and a sequel entitled "*A Bad Moms Christmas*" which, upon information and belief was released in November 2017.

12. After Plaintiff filed its trademark applications identified above, and after Plaintiff purchased its domain names www.badmoms.life and www.badmoms.me, Defendant began, on August 9, 2017, filing numerous applications for United States Trademark registration under Section 1(b) of the Trademark Act, 15 U.S.C. § 1052(b) directed to the marks **BAD MOMS** and **BADMOMLIFE** for a very large list of goods and services claiming a *bona fide* intention to use said marks in the future in connection therewith.  Some of the goods and services recited in Defendant's applications filed on August 9, 2017, subsequent to Plaintiff's filing, are identical to those contained in Plaintiff's applications filed back on January 27, 2016.

13. Defendant filed its applications on August 9, 2017, more than six months following Plaintiff's applications for United States Trademark registration.

14. One of Defendant's applications, namely, Application No. 87562556 for **BAD MOMS** is for: "Alcoholic beverages except beer; spirits; liquers" in International Class 33.

15. Defendant filed another application, namely, Application No. 87562399 for **BAD MOMS**, for use in connection with:

> Beverageware; bottle chillers specially adapted for use with wine bottles; bottle stoppers specially adapted for use with wine bottles; candle holders; charms for attachment to beverage glassware for identification purposes; coasters, not of paper or textile; cocktail plates and serving platters; cocktail shakers; containers for household or kitchen use; cutting boards; decorative ceramic tiles not for use as building materials; drinking steins; flasks; lunch boxes with drinking cups; milk bottles sold empty; pet feeding dishes; recipe boxes; serving trays; tea tumblers in the nature of insulated drinking containers with infusers for brewing tea; teapots; textile lunch bags; thermal insulated can wraps for

keeping contents hot or cold; thermal insulated containers for food or beverage; travel mugs; water bottles sold empty, in International Class 21.

16. Defendant filed yet another application, Application No. 87562696, for **BAD MOMS**, for use in connection with various services in International Class 41 which include: "Entertainment services in the nature of live musical performances…live entertainment events."

17. Finally, among various other applications, Defendant filed an additional application, Application No. 87562628, for **BADMOMLIFE**, for use in connection with various services in International Class 41 which include "Entertainment services in the nature of live musical performances…live entertainment events."

18. On October 10, 2017, Defendant's counsel sent a demand letter to Plaintiff alleging priority of right to **BAD MOMS** marks, that Plaintiff's use of the marks will constitute trademark infringement and unfair competition. Therein, Defendant threatened federal litigation if its list of demand were not immediately met which included abandoning Plaintiff's trademark applications, agreement not to use the **BAD MOMS** marks, change of Plaintiff's corporate name, transfer of Plaintiff's domain names to Defendant and for an accounting of all revenues (***Exhibit "A"*** hereto).

19. Plaintiff and Defendant cordially and professionally attempted to resolve the dispute outlined in Defendant's demand letter but, to date, has been unable to secure Defendant's cooperation short of a complete surrender of rights and assets by Plaintiff to Defendant. On November 17, 2017 and December 13, 2017, Defendant renewed its demands in follow-up demand letters.

20. Defendant's attempts to curtail or interfere with the rights of Plaintiff were done willfully and knowingly, and with the specific intent to capitalize on business opportunities first conceived of, developed and acted upon by Plaintiff.

21. The cloud of uncertainty looming over Plaintiff's business and its future is interfering with its business, has caused it to reschedule events, halt certain activities, strain relationships and interfere with commitments to third-parties, and is otherwise causing great and irreparable harm and damage to Plaintiff.

22. Plaintiff has no adequate remedy at law relative to the continued and future harm expected to be suffered from Defendant's continued conduct.

23. All prerequisites to filing suit have been satisfied, have occurred or have been waived.

24. As a direct and proximate result of the Defendant's acts complained of herein, Plaintiff has been forced to retain the undersigned firm, and has agreed to pay said firm a reasonable fee for its services.

## COUNT I

### DECLARATORY JUDGMENT AS TO OWNERSHIP AND PRIORITY OF RIGHT
### WRIT OF MANDAMUS

25. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 24, as if fully set forth herein.

26. This claim arises under 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment, and under the authority this Court has over trademark registrations and to otherwise rectify the federal trademark register as stated in the Lanham Act, 15 U.S.C. § 1119.

27. To the extent Defendant is still planning to use, has used, or is using the marks **BAD MOMS**, **BADMOMLIFE**, or any confusingly similar mark in connection with Plaintiff's Goods and Services, such us would be, or has been subsequent to the filing date of Plaintiff's Applications, and Plaintiff therefore has priority over the marks for purposes of such goods or services and for related goods and service.

28. Conditioned upon Plaintiff's filing of its Statement of Use under Section 1(d)(1) of the Trademark Act, 15 U.S.C. § 1051(d)(1), Plaintiff has nationwide priority of right over the marks **BAD MOMS** in connection with Plaintiff's Goods and Services, as compared to Defendants' filing dates and use, if any, of the **BAD MOMS** and **BADMOMLIFE** marks in connection with the goods and services listed in Defendant's App. Nos. 87562556, 87562399, 87562696 and 87562628.

29. To the extent Defendant has used or are using any the **BAD MOMS**, **BADMOMLIFE**, or any confusingly similar marks in United States commerce in connection with Plaintiff's Goods and Services, or related goods or services, such use by Defendant is without Plaintiff's authorization, and is in a manner such that Defendant is, or will be misrepresenting the source of such goods and services.

30. Defendant's proposed marks **BAD MOMS** and **BADMOMLIFE** are likely to be confused by consumers with Plaintiff's **BAD MOMS** mark and/or likely to lead to consumer mistakes or to a false association between Plaintiff and Defendant and/or the source of their respective goods and services.

31. As detailed herein, Defendants have not established trademark rights in the United States in the marks **BAD MOMS** or **BADMOMLIFE** in connection with Plaintiff's

Goods and Services prior to Plaintiff, yet Defendant has threatened Plaintiff with legal action relative to its marks if Plaintiff does not concede priority to Defendant, withdraw its applications for U.S. Trademark Registration directed to the **BAD MOMS** mark, agree not to use the mark in commerce and transfer its assets to Defendant.

32.     As a result, there is an actual and judiciable controversy between Plaintiff and Defendant as to priority of right to use and the right to register the respective marks of the parties in connection with Plaintiff's Goods and Services.

33.     Therefore, Plaintiff is in need of, and hereby requests a declaration from this Court that Plaintiff has priority of right to the mark **BAD MOMS** in the United States at least in connection with Plaintiff's Goods and Services, related goods and services and other goods and services that are within Plaintiff's reasonable zone of expansion and is also in need of a certified order from this Court to the Director of Trademarks at the USPTO under 15 U.S.C. § 1119 to otherwise permit registration of Plaintiff's Application Nos. 87315504 and 87315506, and to instruct the USPTO to issue a final refusal of Defendant's App. Nos.    87562556, 87562399, 87562696 and 87562628.

## COUNT II
### INJUNCTION – 15 U.S.C. § 1125(a)

34.     Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 24, as if fully set forth herein.

35.     This claim arises under Section 43(a) of the United States Trademark Action, 15 U.S.C. § 1125(a).

36.     Conditioned upon Plaintiff's filing of its Statement of Use under Section 1(d)(1) of the Act, 15 U.S.C. § 1051(d)(1), Plaintiff has nationwide priority of right over the marks **BAD**

**MOMS**, and confusingly similar marks, in connection with Plaintiff's Goods and Services and related goods and services.

37. Defendant has threatened to use, and filed a statement under penalty of perjury in its trademark applications to the effect that it has a *bona fide* intention to use the mark **BAD MOMS** in connection with wines, spirits, liquors and entertainment-related events.

38. To the extent Defendant is planning to use, has used, or is using the marks **BAD MOMS**, **BADMOMLIFE**, or any confusingly similar mark in connection with Plaintiff's Goods and Services, such us would be, or has been subsequent to the filing date of Plaintiff's Applications, and Plaintiff therefore has priority over the marks for purposes of such goods or services and for related goods and services.

39. Defendant's proposed mark **BAD MOMS**, if used in connection with Plaintiff's Goods and Services, is likely to be confused by consumers with Plaintiff's **BAD MOMS** mark and/or likely to lead to consumer mistakes or to a false association between Plaintiff and Defendant and/or the source of their respective goods and services.

40. Defendants have not established trademark rights in the United States in the marks **BAD MOMS** or **BADMOMLIFE** in connection with Plaintiff's Goods and Services prior to Plaintiff, yet Defendant has threatened to commence use of the mark **BAD MOMS** in connection with wines, spirits, liquors and certain events which are believed to be within the scope of Plaintiff's Goods and Services, or at least related thereto.

41. Plaintiff is therefore in need of an injunction enjoining and restraining Defendant, from using the mark **BAD MOMS** or any confusingly similar mark in connection with

Plaintiff's Goods and Services, and related goods and services to prevent irreparable harm to Plaintiff.

42. The balance of any harms resulting from the injunctive relief requested herein weigh in favor of granting injunctive relief to Plaintiff.

43. The public interest would be served by the injunctive relief requested herein as it will reduce or prevent consumer confusion, if any.

## COUNT III
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND ABSENCE OF UNFAIR COMPETITION
(In the alternative to Count I and III)

44. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through24, as if fully set forth herein.

45. This claim arises under 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment and under the authority this Court has over trademark registrations and to otherwise rectify the federal trademark register as stated in the Lanham Act, 15 U.S.C. § 1119, relating to claims of trademark infringement and unfair competition asserted by Defendant.

46. In Defendant's demand letters it alleged that Plaintiff's use or proposed use of the mark **BAD MOMS** is likely to cause consumer confusion given Defendant's use of the film titles "*Bad Moms*" and "*A Bad Moms Christmas*" in connection with motion pictures, and possibly in light of Defendant's intention to expand such use as reflected in its numerous trademark applications.

47. Plaintiff has denied such claims specifically disputing that Defendant acquired any trademark rights whatsoever by reason of its claimed utilization of the film title "*Bad Moms*" for its first film.

48. Plaintiff also disputes that its use or contemplated uses of its **BAD MOMS** mark in connection with Plaintiff's Goods and Services is not likely to cause consumer confusion, mistake, create a false association or otherwise lead consumers to believe there is any affiliation between Plaintiff and Defendant.

49. Plaintiff has never, and does not plan to ever make any reference to any of Defendant's alleged films in any public statement, in any marketing material or advertisements or on any products whatsoever.

50. Plaintiff's branding, character, fonts and color scheme are remarkably different from those of Defendant.

51. Plaintiff has never, and has no plans to ever produce, distribute a motion picture, much less one which bears the mark **BAD MOMS** in its title.

52. Plaintiff has no intent to copy or palm off of the Defendant or its alleged films and has actually, upon discovery of the opening date of Defendant's second alleged film "*A Bad Moms Christmas*", Plaintiff moved the date of its event from November 3, 2017 to January 25, 2018 in a good faith attempt to avoid further confrontation with Defendant. Due to Defendant's actions, Plaintiff has not sold tickets to the event at this time and has temporarily halted preparations for the event until this dispute can be resolved.

53. As a result, there is an actual and judiciable controversy between Plaintiff and Defendant as to whether Plaintiff's use and registration of the mark **BAD MOMS** is likely to cause consumer confusion and whether such use would infringe, unfairly compete with, or otherwise violate any right of the Defendant.

54. Plaintiff therefore requests an alternative declaration from this Court that: a) the respective **BAD MOMS** and **BADMOMSLIFE** marks used or proposed to be used by the respective parties will not result in a likelihood of consumer confusion, mistake or false affiliation; 2) that Plaintiff has not and is not infringing on any trademark rights of the Defendant in the mark **BAD MOMS**, if any and that Plaintiff's trademark applications directed to the mark **BAD MOMS** referenced above should proceed to registration on the USPTO's Principal Register without interference by Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief against Defendant as follows:

1. A declaratory judgment declaring that Plaintiff has nationwide priority of right over the **BAD MOMS** mark in the United States in connection with Plaintiff's Goods and Services, related goods and services and other goods and services within Plaintiff's reasonable zone of expansion.

2. An order enjoining and restraining during the pendency of this action, and thereafter permanently enjoining and restraining Defendant, its agents, servants, employees, attorneys, parents and subsidiaries, related companies, and all persons acting for, with, by, through or under Defendant from directly or indirectly:

a. Using the marks **BAD MOMS**, **BADMOMSLIFE** or any name, term or mark similar thereto or any confusingly similar designation alone or in combination with other terms (the "Subject Marks"), as trademarks, slogans, tag lines, trade name components or otherwise, as domain names, sub-domains, directory names, email addresses or other such computer addresses, as the name of Defendant's websites, social media profiles and names or any

webpage, as part of a URL, metatag, hashtag, Ad Words, search term, or, in any other way to market, advertise, sell, offer for sale or identify Plaintiff's Goods and Services or related goods and services;

 b. Otherwise infringing Plaintiff's Mark employing the phrase **BAD MOMS** in connection with Plaintiff's Goods and Services or related goods or services;

 c. Unfairly competing with Plaintiff in any manner whatsoever; and

 d. Causing a likelihood of consumer confusion of any kind including, without limitation, direct confusion, initial interest confusion, forward confusion, reverse confusion or other injury to Plaintiff's business reputation, or dilution of the distinctive quality, of Plaintiff's **BAD MOMS** mark by any unauthorized use, dilution, blurring, devaluing, disparaging or tarnishing of the same.

 2. An order requiring Defendant to deliver and destroy all devices, websites, social media profiles, computer hardware and software, files, menus, hard drives, servers, diskettes and backups, literature, advertisements, packages, labels, signs, prints, wrappers, receptacles, and all other materials and products in the possession of Defendant or under Defendant's control which have ever been used in connection with Plaintiff's Goods/Services or related goods or services, bearing the Subject Marks, as a brand names or trademarks.

 3. An order requiring Defendant to notify, in writing, and direct to its internet service provider(s), web host(s) and all publishers of directories or lists, including Internet search engines, in which the mark **BAD MOMS** appears or in which the phrase **BAD MOMS** or any confusingly similar mark is employed or used in connection with any of Plaintiff's Goods and Services or related goods or services, to delete all references to the Subject Marks from its public

databases, search engine directories, directory assistance and from all future directories in which said marks are to appear, and to delete all forwarding or "cache memory" or storage mechanisms referencing the said marks as brand names or trademarks.

4. An order requiring Defendant to file with the Court, and serve upon Plaintiff's counsel, within thirty (30) days after entry of judgment, a report, in writing, and under oath, setting forth, in detail, the manner and form in which Defendant has complied with the requirements of the injunction and order.

5. A declaratory judgment, writ of mandamus, certified order to the Director of Trademarks at the USPTO, or other appropriate order to the USPTO declaring that Defendant's App. Nos. 87562556, 87562399, 87562696 and 87562628 directed to the standard character word marks **BAD MOMS** and BADMOMLIFE should be finally rejected and that Defendant is otherwise not entitled to registration therefor.

6. A declaratory judgment, writ of mandamus, certified order to the Director of Trademarks at the USPTO, or other appropriate order to the USPTO declaring that Plaintiff's Application Nos. 87315504 and 87315506 directed to the standard character word mark **BAD MOMS** are valid and should be registered on the USPTO's Principal Register notwithstanding any claim of rights of the Defendant.

7. An alternative declaratory judgment declaring that Plaintiff is not infringing on any trademark rights of Defendant in the **BAD MOMS** and **BADMOMSLIFE** marks and is not otherwise engaging in unfair competition or creating a false designation of origin.

8. An award of Plaintiff's reasonable attorneys' fees incurred in this litigation.

9. An award of Plaintiff's taxable costs and other costs, expenses and disbursements incurred herein.

10. All such other and further relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**GIMBLE LAW, P.A.**
200 South Andrews Avenue, Suite 100
Ft. Lauderdale, Florida 33301
Telephone (954) 351-7474
Facsimile (954) 351-7475
Email: Dgimble@gimblelaw.com

/s/ Darlene R. Gimble, Esq.
Darlene R. Gimble, Esq.
FL Bar No. 062486