UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-CV-62510-BLOOM/VALLE

BAD MOMS, LLC,
a Florida limited liability
company,

    Plaintiff,

v.

STX FINANCING, LLC,
a Delaware limited liability company,

    Defendant.
_____

STX FINANCING, LLC,
Counter-Plaintiff/Third-Party Plaintiff,

v.

BAD MOMS, LLC, counter-Defendant;
and DARLENE R. GIMBLE, Third-Party
Defendant.
_____

## ORDER ON DEFENDANT'S MOTION TO COMPEL

THIS CAUSE is before the Court upon Defendant Counterclaimant and Third-Party Plaintiff STX Financing, LLC's Motion to Compel Plaintiff to provide further responses to: (1) Interrogatories; and (2) Request for Production (ECF No. 25) (the "Motion"). United States District Judge Beth Bloom has referred the case to the undersigned for discovery. *See* (ECF No. 19). The Court has reviewed the Motion, Plaintiff's Response (ECF No. 27), and Defendant's Reply (ECF No. 28), and being otherwise fully advised in the matter, it is hereby **ORDERED AND ADJUDGED** that the Motion is **GRANTED IN PART** as set forth below.

## BACKGROUND

On October 10, 2017, STX Financing, LLC ("STX"), the producer and distributor of the motion pictures *Bad Moms* and *A Bad Moms Christmas* (the "Bad Moms Motion Pictures") sent Bad Moms, LLC ("BML") a cease and desist letter demanding that it cease any use of the BAD MOMS mark and abandon its pending applications to register BAD MOMS with the U.S. Patent & Trademark Office ("USPTO"). Thereafter, Plaintiff BML commenced this action against Defendant STX seeking declaratory and injunctive relief regarding its use of the name BAD MOMS with special event services and alcoholic beverages. (ECF No. 1). In its Complaint, Plaintiff alleges that it has invested considerable time, effort, money, and other resources into a start-up business for the purpose of planning and conducting business networking, social, commercial, and educational events geared toward women, and a line of wines and spirits targeted with the brand BAD MOMS. (ECF No. 1 at ¶ 3). Plaintiff allegedly filed two applications for United States Trademark Registration directed to the mark BAD MOMS with the USPTO. *Id.* at ¶ 8. In its Answer and Counterclaim, Defendant alleges that since 2014, it has actively participated in the motion picture industry and produced and distributed the *Bad Moms* Motion Pictures in 2016. *Id*. at ¶¶ 6-7. More specifically, STX asserts claims for trademark infringement, trademark dilution, and unfair competition under the Lanham Act and Florida law. (ECF Nos. 5 at 18-24 and 25 at 2)

Defendant has served Plaintiff with discovery demands, including interrogatories and requests for production. *See* (ECF No. 25); *see also* (ECF No. 25-1 at 35-40, 47-67) (including Defendant's First Set of Interrogatories and Plaintiff's Responses to First Request for Production). Defendant asserts that Plaintiff's discovery responses remain deficient despite having met and conferred regarding the issues, and Plaintiff's twice amended responses and productions. *See generally* (ECF No. 25 at 3-4). Consequently, Defendant seeks to compel Plaintiff to supplement its responses to Interrogatories 10, 11, and 18, and to Defendant's First Request for Production. *See*

*generally* (ECF No. 25). Plaintiff, in its response to the Motion, provides fuller answers to the Interrogatories and attempts to explain its efforts at complying with its discovery obligations. *See generally* (ECF No. 27). The Motion is now ripe for adjudication.

## **DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.[1] Information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coach, Inc. v. Visitors Flea Mkt., LLC*, No. 6:11-CV-1905-ORL-19, 2013 WL 5770598, at *1 (M.D. Fla. Oct. 24, 2013) (internal citations omitted). Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action. *Id*. Moreover, pursuant to Rule 34(a), parties can request the production of documents and other things within the scope of Rule 26(b).

Furthermore, answers to interrogatories must be responsive, full, complete and unevasive. *Aiges v. Ironshore Specialty Ins. Co.*, No. 15-CV-61300, 2015 WL 12564324, at *1 (S.D. Fla. Dec. 9, 2015); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) (internal citations omitted). The answering party cannot limit its answers to matters solely within its personal knowledge and ignore information immediately available to it or under its control. *Id.* When an appropriate interrogatory is propounded, the answering party is required to give the information known to it personally, or through its attorney, investigators, or other agents or representatives that it employs. *Id.* If the answering party nonetheless lacks necessary information

---

[1] Further, proportionality considers the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b).

to make a full, fair and specific answer to an interrogatory, then it should say so under oath and explain the efforts it made to obtain the information. *Id.*

Against this legal backdrop, the Court considers the issues raised in the Motion.

**Interrogatory 10**

Interrogatory 10 requests that Plaintiff:

> State every reason why BML selected BAD MOMS as a trademark to use in commerce for products and services, including, but not limited to, whether the *Bad Moms* Motion Pictures were an inspiration or basis for the decision to select BAD MOMS.

(ECF Nos. 25 at 5, 25-1 at 73).

Plaintiff responded as follows:

> The managing member of BAD MOMS, LLC, having heard the expression on multiple occasions and being referred to as a 'Bad Mom' in her real life affectionately and negatively by her ex-husband was a catalyst to the creative project for being a single mom and entrepreneur. The idea came about when she was going out as a single mom with other moms and seeking fun events and ways to spend time and develop friendships outside of work. In addition, DARLENE R. GIMBLE saw various products on Etsy and other websites with cute sayings for gifts for friends. The idea for a wine line came about due to business connections and the ability to develop production and distribution channels.

*Id*.

Interrogatory 10 expressly asked whether "the *Bad Moms* Motion Pictures were an inspiration or basis for the decision to select [the name] BAD MOMS." (ECF Nos. 25 at 5, 25-1 at 73). Plaintiff did not respond to that portion of the Interrogatory. However, in response to the Motion, Plaintiff states that "the movie *Bad Moms* was a very minor inspirational influence on some of the themes in the proposed business, together with influences from various other sources . . . ." (ECF No. 27 at 3). Plaintiff admittedly failed to fully respond to Interrogatory 10. Accordingly, Defendant's Motion to compel a more complete response to this Interrogatory is GRANTED. Plaintiff must amend its answer to Interrogatory 10 to provide a more fulsome response under oath.

**Interrogatory 11**

Interrogatory 11 asked that Plaintiff:

Describe in detail all facts related to BML's knowledge of STX, STX's Marks, and the *Bad Moms* Motion Pictures at the time it selected BAD MOMS as a trademark to use in commerce for products and services, and at the time BML selected the trade name Bad Moms, LLC including, but not limited to, [whether] BML, including any of its employees or executives, had viewed or seen any of the *Bad Moms* Motion Pictures.

(ECF Nos. 25 at 7, 25-1 at 74).

Plaintiff responded as follows:

BAD MOMS, LLC objects to this interrogatory as being unintelligible. To the best of BAD MOMS, LLC'S understanding of the interrogatory, it answers as follows: BAD MOMS, LLC had no knowledge of Defendant, its marks or any motion pictures Defendant alleges to have produced at the time it selected "Bad Moms." DARLENE R. GIMBLE had seen the "Bad Moms" expression in literature and idioms for at least five (5) years prior to her selection of the mark and name.

(ECF No. 25-1 at 74).

In response to the Motion, Plaintiff states that its interrogatory response was "sufficient" because "BML has only one Manager. [Ms. Gimble] was the only executive or person who viewed the Bad Moms film prior to filing BML's trademark applications." (ECF No. 27 at 4). Based on Plaintiff's representation regarding Ms. Gimble's role, Defendant's Motion to compel a more fulsome response under oath to Interrogatory 11 is GRANTED.

Lastly, in providing amended responses to Interrogatories 10 and 11, Plaintiff cannot limit its answers to matters solely within its personal knowledge and ignore information immediately available to it or under its control, or that of its agents and officers. *Aiges*, 2015 WL 12564324, at *1.

**Interrogatory 18**

In relevant part, Interrogatory 18 requests that Plaintiff:

Identify and provide all details relating to all completed or planned or proposed events or parties offered or promoted under the BAD MOMS trademark or the trade name Bad Moms, LLC . . . .

(ECF No. 25-1 at 76).

Plaintiff's response includes a statement that:

BAD MOMS, LLC interviewed and entered into relationships with event operators, hosts and emcees, but did not distribute any invitations or solicitations. *Draft materials, logo, corporate identify character, website, direct mail solicitations and social media material was created.* None were launched or publicly distributed in any way. In general terms, without waiver of any specific trade secrets or other specific confidential information, the persons intended to be invited were paid attendants of the events, sponsors, vendors, exhibitors, artists, performers, hosts, staff and other members of the general public.

*Id.* (emphasis added).

Defendant argues that Plaintiff has not produced the documents referenced in Plaintiff's response to Interrogatory 18. (ECF No. 25 at 11). In its response to the Motion, Plaintiff did not address Defendant's arguments regarding Interrogatory 18. *See generally* (ECF No. 27). Consequently, in the absence of a more specific objection to Defendant's arguments, the Court finds that Plaintiff must produce those documents referenced in its response to Interrogatory 18. Accordingly, Defendant's Motion to compel a supplemental response to Interrogatory 18 is GRANTED to require Plaintiff to provide the documents referenced it its response, or confirm that all responsive documents have been produced.

**Request for Production 21**

Defendant seeks to compel Plaintiff to produce supplemental documents in response to Request 21. (ECF No. 25 at 8 n.2). Request 21 seeks "[a]l documents referring to the date that BML first became aware or acquired knowledge of the *Bad Moms* Motion Pictures." (ECF No. 25-

1 at 53). Plaintiff's response to Request 21 was a one-sentence statement identifying "STX's cease and desist letter." *Id*.

As with Interrogatory 18, Plaintiff's Response did not address Defendant's arguments regarding Request 21. Consequently, because Plaintiff failed to object to the Motion to compel a supplemental response to Request 21, the Court finds that Plaintiff must supplement its response to produce all documents responsive to Request 21 that are in Plaintiff's possession, custody, or control.

### Plaintiff's Overall Production of Responsive Documents

The parties generally disagree about the accessibility of the documents that Plaintiff produced, the completeness of the production, and the overall parameters of the responsive materials. *See generally* (ECF Nos. 25, 27). More specifically, Defendant alleges that the emails and other communications that Plaintiff produced were incomplete and did not include referenced attachments, were cut-off, or were otherwise incomplete. (ECF No. 25 at 8). Plaintiff attempts to explain the parameters and format for its production and ultimately offers to "confer with STX's counsel in an effort to clarify and resolve these issues." (ECF No. 27 at 5). The Court agrees that a good faith conferral (in person or by telephone) is necessary for the parties to clarify and resolve these issues.

Consequently, by the date set forth below, the parties must meet and confer (in person or by telephone) to develop a joint discovery protocol for this case that addresses:

(i) the identity of all custodians who are affiliated with Plaintiff who may have knowledge of the claims and defenses in this case (including but not limited to

|      | Michael Santucci), whose files, emails, and electronic communications may be searched;[2] |
| ---- | --- |
| (ii) | the format and method for searching all responsive documents, including emails and any attachments referenced in emails; |
| (iii) | the existence, if any, of electronic communications (including text messages) involving the claims and defenses in this case;[3] |
| (iv) | the parameters of a privilege log for those materials withheld based on a claim of privilege or attorney work product;[4] and |
| (v) | as further discussed below, the scope and parameters of a joint protective order that will govern the production of confidential information in this litigation. |

*See, e.g., Balthazar Mgmt., LLC v. Beale Street Blues Co., Inc.*, No. 17-CV-81214-BB (S.D. Fla. Aug. 24, 2018) (ECF No. 194) (providing an example of joint search protocol).

---

[2] In this regard, although Plaintiff states that "BML answer[ed] interrogatories and produce[d] all non-privileged documents it located after diligent searches by various individuals," Plaintiff fails to describe its search efforts or produce any evidence to support its statement.

[3] If, after a diligent search based on the joint search protocol, Plaintiff maintains its position that there are "no text messages in the possession, or under the control of BML or Ms. Gimble, or any of their attorneys," (ECF No. 27 at 6), Plaintiff must so state under oath in an amended response to Defendant's Request for Production.

[4] Plaintiff asserts that it has produced a privilege log albeit after the Motion was filed. (ECF No. 27 at 3). It remains unclear whether the privilege log complies with the Rules of this Court, which require that it identify each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed. *NIACCF, Inc. v. Cold Stone Creamery, Inc.*, No. 12-CV-20756, 2014 WL 4545918, *5 n.6 (S.D. Fla. Sept. 12, 2014) (citing *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5057844, at *9 (S.D. Fla. Oct. 18, 2012). Thus, a proper privilege log should contain the following information regarding the challenged entries: (1) the name and job title or capacity of the author of the document; (2) the name and job title or capacity of each recipient of the document; (3) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than the author(s); (4) the title and description of the document; (5) the subject matter addressed in the document; (6) the purpose(s) for which it was prepared or communicated; and (7) the specific basis for the claim that it is privileged. *Id.*

**Production of Confidential Documents Subject to Protective Order**

The parties also disagree regarding the terms of a protective order and have submitted competing orders. (ECF Nos. 25 at 10, 27 at 7-8); *compare* (ECF No. 25-1 at 130-147) (Defendant's proposed protective order) *with* (ECF No. 27-1) (Plaintiff's proposed protective order). The dispute revolves around who will have access to confidential information and whether an "Attorney's Eyes Only" provision is appropriate. *Id*. Relatedly, pending the entry of a protective order, the parties have withheld production of responsive documents to the extent that materials are confidential.[5] (ECF Nos. 25 at 10, 27 at 7-8).

Against this backdrop, at the meet and confer described above, the parties must discuss the terms of a protective order. In particular, the parties should discuss whether an "Attorney's Eyes Only" provision is appropriate. Importantly, the parties seem to agree that Ms. Gimble will be granted access to all confidential documents—apparently the disputed issue that had prevented the parties from agreeing to the terms of a protective order. *See* (ECF Nos. 25 at 10, 25-1 at 5, 27 at 7).

The Court, therefore, DENIES Defendant's Motion for the entry of its proposed protective order. (ECF No. 25 at 10). Rather, within five days of the meet and confer, the parties are to submit to the Court a joint proposed protective order for the Court's consideration.

Lastly, the Court finds that an award of fees and costs is unwarranted at this time. Thus, Defendant's request for attorney's fees and costs incurred in connection with the Motion is denied. *See* (ECF No. 25 at 11).

---

[5] In its Response to the Motion, Plaintiff asserts that "it does not yet have confidential documents," but Plaintiff nevertheless proposes a protective order with an "Attorney's Eyes Only" provision. (ECF Nos. 27 at 7, 27-1).

## CONCLUSION

For the reasons set forth above, Defendant Counterclaimant and Third-Party Plaintiff STX Financing, LLC's Motion to Compel (ECF No. 25) is **GRANTED IN PART**. Specifically:

1. By **September 7, 2018**, Plaintiff must amend its response to Interrogatories 10 and 11. Plaintiff must also supplement its response to Defendant's First Request for Production to produce the documents referenced in its response to Interrogatory 18.

2. By **September 10, 2018**, the parties must meet and confer to develop a joint protocol regarding discovery in this case. Thereafter, within 5 days of the meet and confer:

    a. Plaintiff must supplement its responses to Defendant's Request for Production using the joint search protocol and produce all non-privileged, responsive documents;

    b. Plaintiff must serve Defendant with a corresponding privilege log that complies with the requirements of the Federal Rules of Civil Procedures and Local Rules of this Court; and

    c. The parties must submit to the Court a joint proposed protective order for the Court's consideration.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on August 31, 2018.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Beth Bloom
    All Counsel of Record